1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CARL E. HILL,                           No.  2:12-cv-0595-EFB P

12                  Petitioner,

13          vs.                              ORDER

14   CONNIE GIBSON,

15                  Movant.

16

17          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  He challenges a judgment of conviction entered against him on

19   September 9, 2008, in the San Joaquin County Superior Court on charges of second degree

20   robbery, false imprisonment by violence, and kidnapping for the purpose of robbery.  He seeks

21   federal habeas relief on the following grounds:  (1) the evidence was insufficient to support his

22   conviction for kidnapping to commit robbery; (2) jury instruction error violated his right to due

23   process; (3) his appellate counsel rendered ineffective assistance; (4) the restitution fine imposed

24   by the trial court violated his right to due process and a fair trial; and (5) cumulative error at his

25   trial violated his right to due process.  Upon careful consideration of the record and the applicable

26   law, and for the reasons set forth below, petitioner's application for habeas corpus relief is denied.

27   /////

28   /////

                                              1

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Based on defendant Carl Erwin Hill and one to two accomplices engaging in a spree of robberies of businesses in Stockton, a jury found defendant guilty of seven counts of second degree robbery (counts 1-3, 9, 11, 13, 16), three counts of false imprisonment by violence (counts 10, 12, 14), and one count of kidnapping for the purpose of robbery (count 15). As to robberies in counts 9 and 11, the jury found defendant personally used a firearm and as to robberies in counts 1-3, 13 and 16, the jury found he was armed with a firearm. The jury acquitted defendant of three counts of second degree robbery, two counts of false imprisonment, and one count of felony assault.

> For the robbery and false imprisonment charges, the court sentenced defendant to a determinate term of 28 years; for the kidnapping for the purpose of robbery charge, the court sentenced him to life with possibility of parole plus one year for the armed enhancement.[1]

> On appeal, defendant contends: (1) aside from the robbery in count 13, the evidence is insufficient to support any of the firearm enhancements; and (2) the trial court should have stayed, pursuant to Penal Code section 654, the consecutive term imposed for the false imprisonment charge in count 14. We reject defendant's first contention, but agree with him on the second one. Accordingly, we shall order the sentence on count 14 stayed.

> **FACTS**

> Even though defendant and his accomplice(s) were masked during the robberies of which he was convicted, he does not challenge the sufficiency of the evidence supporting the finding he was a perpetrator in those robberies. Because defendant's contentions relate only to the sufficiency of the evidence to prove the firearms were not real and to his punishment for false imprisonment, we set out the facts only as necessary for resolution of those contentions.

/////

/////

/////

---

[1] We note that the abstract of judgment states that defendant was sentenced for kidnapping to 15 years to life, whereas the sentence the court imposed was a term of life with possibility of parole. We shall direct the trial court to amend the abstract of judgment accordingly.

**A**

**Count 1 (Sprint Store)**

On November 30, 2006, about 4:00 p.m., defendant and an accomplice, each carrying a handgun, entered a Sprint store. One man pointed a silver gun at assistant manager Robert Dickerson and demanded and received money.  After ordering the employees to get on the ground, the robbers fled.  Employees Terry Beth and Alberto Medina described the guns used as one silver, one black. Medina testified the robber holding the silver gun cocked it during the robbery.

**B**

**Counts 2, 3 and 14 (Sleep Train Store)**

A few stores down from the Sprint store is a Sleep Train store. About 4:00 p.m. on November 30, 2006, defendant and two others, two of whom carried guns, entered the store, pointed the guns at Michelle Hooper and demanded money.  Hooper led the men to a room in the store and gave them money from a locked cabinet.  One of the men continued to watch her while the other two ransacked the store.  Sean Beahm, the assistant manager, entered the store and was ordered at gunpoint to get on the ground and to give up his wallet, which he did.  Beahm was then taken to the room where Hooper was being held, the two were ordered not to move or leave, the door was closed, and the men left.  Hooper and Beahm described the guns as one silver, one black.

**C**

**Counts 15-16 (Bank of the West)**

On December 7, 2006, Paramjit Kaur, an unarmed security guard for Bank of the West, was standing outside the entrance to the bank when defendant and another man got out of a car, put a gun in her back and forced her into the bank.  Each man had a handgun which he used to obtain money from some of the tellers.  The guns were described as silver, black, or partially black and silver.  Tellers Vanessa Velasco and Lupita Nicole described the gun held on Velasco as a black handgun; however, each woman later testified that the black gun looked like the photograph of a black and silver BB gun which had been recovered by the police from the residence of a coperpetrator's girlfriend.

**D**

**Counts 9-12 (Subway Shop)**

On January 8, 2007, at approximately 9:30 a.m., defendant and an accomplice, each carrying a handgun, entered a Subway shop and obtained money from Lady Seemuong and Thyseth Siv.  The two women were taken to a room, told to count to 100, a ladder was

placed in front of the door and the robbers left.  The guns used were described as one silver, one black.

**E**

**Count 13 (TJ Cigarettes Store)**

On January 23, 2007, about 4:00 p.m., defendant and an accomplice, each masked and the accomplice carrying a silver, white, or gray handgun, robbed Lynda Pham Lee of money at a TJ Cigarettes Store.  Pham Lee's daughter, Jacqueline Lee, came out of a bathroom and struggled with defendant.  As both men were leaving the store, the accomplice fired a shot which ricocheted and a portion of the bullet struck Jaqueline Lee's leg.  The expended bullet was found in the shop.  Also left behind were a hat and a headband which were recovered by the police.

DNA found on the hat and the headband left by the robbers at TJ Cigarettes led the police to defendant and Devonya Carson. Carson's residence was searched and a loaded black and silver .32-caliber revolver was found.  A plastic BB pistol and .32-caliber ammunition were found in a search of Carson's girlfriend's residence.  No guns were found at defendant's residence.

ECF No. 13-1 at 2-6.

The Court of Appeal issued the following disposition on petitioner's appeal:

The matter is remanded to the superior court with directions to stay, pursuant to Penal Code section 654, the sentence imposed for false imprisonment on count 14, and to correct the abstract of judgment to reflect that the enhancement to count 15 for use of a firearm pursuant to Penal Code section 12022.53, subdivision (b) was in fact an enhancement for being armed with a firearm pursuant to Penal Code section 12022, subdivision (a)(1).  The court is further directed to forward a copy of the amended abstract of judgment reflecting these changes to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

*Id.* at 14-15.

Petitioner subsequently filed a petition for review in the California Supreme Court, claiming that the evidence was insufficient to establish that a firearm was used in any of the robberies except the robbery charged in count 13.  Resp't's Lodg. Doc. 9.  The Supreme Court summarily denied that petition on October 13, 2010.  *Id.*

On December 7, 2010, the trial court resentenced petitioner to a term of life with the possibility of parole, plus twenty-eight years four months in state prison.  Resp't's Lodg. Doc. 10.

/////

4

On October 1, 2010, petitioner, proceeding without counsel, filed a petition for writ of habeas corpus in the San Joaquin Superior Court.  Resp't's Lodg. Doc. 11.  Therein, he claimed that the evidence introduced at trial was insufficient to support his conviction on the charge of kidnapping for purposes of robbery, and that the jury instructions pertaining to that count violated his federal constitutional rights to due process and equal protection.  *Id.*  The Superior Court denied that petition without prejudice on the grounds that petitioner was represented by counsel at the time he filed the habeas petition in that court.  *Id.*

On July 5, 2011, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, claiming that: (1) the evidence was insufficient to support his conviction for kidnapping to commit robbery; (2) jury instruction error pertaining to that count violated his right to due process; (3) his appellate counsel rendered ineffective assistance; and (4) cumulative error at his trial violated his right to due process.  Resp't's Lodg. Doc. 12.  The Court of Appeal summarily denied that petition on July 7, 2011.  *Id.*

On August 11, 2011, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  Resp't's Lodg. Doc. 13.  Therein, he claimed that: (1) the evidence was insufficient to support his conviction for kidnapping to commit robbery; (2) jury instruction error pertaining to that count violated his right to due process; (3) his appellate counsel rendered ineffective assistance; (4) the restitution fine imposed by the trial court violated his right to due process and a fair trial; and (5) cumulative error at his trial violated his right to due process.  *Id.* That petition was summarily denied by order dated December 21, 2011.  *Id.*

On August 15, 2011, petitioner filed another habeas petition in the California Court of Appeal, claiming that: (1) the evidence was insufficient to support his conviction for kidnapping to commit robbery; (2) jury instruction error pertaining to that count violated his right to due process; (3) his trial appellate counsel rendered ineffective assistance; and (4) the Superior Court failed to "properly rule" on his habeas petition filed in that court.  Resp't's Lodg. Doc. 14.  The Court of Appeal denied that petition with a citation to *In re Clark*, 5 Cal.4th 750, 767-69 (1993) (the court will not consider repeated applications for habeas corpus presenting claims previously

*/////*

5

1   rejected, or newly presented grounds for relief which were known to the petitioner at the time of a

2   prior collateral attack on the judgment).  *Id.*

3          Petitioner filed his federal habeas petition in this court on March 7, 2012.  Respondent

4   filed an answer on January 2, 2013, and petitioner filed a traverse on February 25, 2013.

5   **II.  Standards of Review Applicable to Habeas Corpus Claims**

6          An application for a writ of habeas corpus by a person in custody under a judgment of a

7   state court can be granted only for violations of the Constitution or laws of the United States.  28

8   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

9   application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

10  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

11  2000).

12         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

13  corpus relief:

14             An application for a writ of habeas corpus on behalf of a
       person in custody pursuant to the judgment of a State court shall not
15     be granted with respect to any claim that was adjudicated on the
       merits in State court proceedings unless the adjudication of the
16     claim -

17             (1) resulted in a decision that was contrary to, or involved
       an unreasonable application of, clearly established Federal law, as
18     determined by the Supreme Court of the United States; or

19             (2) resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the
20     State court proceeding.

21         For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

22  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

23  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

24  ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

25  Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

26  what law is clearly established and whether a state court applied that law unreasonably."  *Stanley*,

27  633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

28  precedent may not be "used to refine or sharpen a general principle of Supreme Court

jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  *Id.*  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in

---

[2]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1  federal court was so lacking in justification that there was an error well understood and

2  comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,*131

3  S. Ct. at 786-87.

4    If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

5  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

6  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

7  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

8  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

9  considering de novo the constitutional issues raised.").

10    The court looks to the last reasoned state court decision as the basis for the state court

11  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If

12  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

13  previous state court decision, this court may consider both decisions to ascertain the reasoning of

14  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When

15  a federal claim has been presented to a state court and the state court has denied relief, it may be

16  presumed that the state court adjudicated the claim on the merits in the absence of any indication

17  or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This

18  presumption may be overcome by a showing "there is reason to think some other explanation for

19  the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

20  803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims

21  but does not expressly address a federal claim, a federal habeas court must presume, subject to

22  rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___,

23  ___, 133 S.Ct. 1088, 1091 (2013).

24    Where the state court reaches a decision on the merits but provides no reasoning to

25  support its conclusion, a federal habeas court independently reviews the record to determine

26  whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

27  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

28  review of the constitutional issue, but rather, the only method by which we can determine whether

1 a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no

2 reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

3 reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

4       When it is clear that a state court has not reached the merits of a petitioner's claim, the

5 deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court

6 must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099,

7 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

8 **III. Petitioner's Claims**

9       **A. Sufficiency of the Evidence**

10       In his first claim for federal habeas relief, petitioner argues that the evidence was

11 insufficient to support his conviction and sentence on the charge of kidnapping for the purpose of

12 robbery. ECF No. 1 at 17-21.[3] Specifically, he argues that the evidence demonstrates that any

13 forced movement of the security guard at the Bank of the West was merely incidental to the bank

14 robbery and did not increase the risk of harm to the guard over and above that necessarily

15 inherent in the crime of robbery itself. He states,

16
17       the evidence of the kidnapping was mainly that the suspects grabbed, pushed or ordered the Security Guard at the bank from just outside the door where she was working, to an area immediately inside the door. The suspects did not rob the Security Guard or take
18       her to any particular location in the bank.

19 *Id.* at 17.

20       Petitioner argues there was no evidence of "asportation," in that the movement of the

21 security guard did not substantially increase the risk of harm to her over and above the risk

22 normally present in the crime of robbery. *Id.* at 19. He contends there is a difference between the

23 evidentiary requirements to show asportation for robbery and asportation for kidnapping, and that

24 asportation for kidnapping was not demonstrated at his trial. *Id.* at 20. Petitioner also explains:

25 /////

26 /////

27
28       [3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1
2
3
4

> The only reason the security guard was brought into the bank was so the suspects could rob the bank. The guard was not robbed nor injured. There was no greater risk of harm attendant above that of any other bank robbery based on the repositioning of the guard. Under these facts, the slight movement was merely incidental to the robbery.

5   *Id.* at 20. Petitioner also states that "the possibility of increased harm to the bank guard here was

6   in fact lessened by the 'repositioning' of the guard, by repositioning the guard from the suspects

7   escape route." *Id.* at 21.

8          The last reasoned decision on petitioner's claim of insufficient evidence is the California

9   Supreme Court's summary denial of petitioner's habeas petition containing the same claim.

10  Resp't's Lodg. Doc. 13. Although the Supreme Court did not explain its reasoning, its summary

11  denial is a decision on the merits of this claim. *See Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th

12  Cir. 2012) (a summary denial is presumed to be a denial on the merits of the petitioner's claims).

13         Although the federal court cannot analyze just what the state court did when it issued a

14  summary denial, the federal court must review the state court record to determine whether there

15  was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This

16  court "must determine what arguments or theories . . . could have supported, the state court's

17  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

18  arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

19  Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable

20  basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013)

21  (quoting *Richter*, 131 S. Ct. at 784).

22                        **1.  Applicable Legal Standards**

23         The Due Process Clause "protects the accused against conviction except upon proof

24  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

25  charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a

26  conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

27  rational trier of fact could have found the essential elements of the crime beyond a reasonable

28  doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under

1    Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a

2    reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443

3    U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground

4    of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos*

5    *v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).  Sufficiency of the evidence claims in federal

6    habeas proceedings must be measured with reference to substantive elements of the criminal

7    offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16.

8         In conducting federal habeas review of a claim of insufficient evidence, "all evidence

9    must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d

10   1112, 1115 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences

11   to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

12   inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

13   2060, 2064 (2012) (per curiam) (citation omitted).  "'Circumstantial evidence and inferences

14   drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358

15   (9th Cir. 1995) (citation omitted).

16        "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

17   the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

18   *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  Because this case is governed by the

19   AEDPA, this court owes a "double dose of deference" to the decision of the state court.  *Long v.*

20   *Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th

21   Cir. 2011), *cert. denied* ___ U.S. ___, 132 S.Ct. 2723 (2012)).

22                          **2.  <u>Analysis</u>**

23        At the time of petitioner's crimes, California Penal Code § 209(b)(2) provided that any

24   person who "kidnaps or carries away any individual to commit robbery" shall receive a

25   punishment of life in prison with the possibility of parole.  However, that punishment applies only

26   if the movement of the victim: (1) was "not merely incidental to the commission of the robbery,

27   and (2) substantially increased the risk of harm to the victim over and above that necessarily

28   /////

                                    11

1   present in the crime of robbery itself.  Cal. Penal Code § 209(b)(2); *People v. Vines*, 51 Cal.4th

2   830, 870 (2011).

3
> "With regard to the first prong, the jury considers the 'scope and
> nature' of the movement, which includes the actual distance a
4   victim is moved.  [Citations.]  There is, however, no minimum
> distance a defendant must move a victim to satisfy the first prong."
5   (*People v. Vines* (2011) 51 Cal.4th 830, 870, 124 Cal.Rptr.3d 830,
> 251 P.3d 943.)  We also consider the "context of the environment in
6   which the movement occurred."  (*People v. Rayford* (1994) 9
> Cal.4th 1, 12, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)  "This standard
7   suggests a multifaceted, qualitative evaluation rather than a simple
> quantitative assessment."  (*People v. Dominguez* (2006) 39 Cal.4th
8   1141, 1152, 47 Cal.Rptr.3d 575, 140 P.3d 866.)

9   The second prong "includes consideration of such factors as the
> decreased likelihood of detection, the danger inherent in a victim's
10  foreseeable attempts to escape, and the attacker's enhanced
> opportunity to commit additional crimes.  [Citations.]  The fact that
11  these dangers do not in fact materialize does not, of course, mean
> that the risk of harm was not increased."  (*People v. Vines, supra*,
12  51 Cal.4th at p. 871, 124 Cal.Rptr.3d 830, 251 P.3d 943)  "In the
> vast majority of cases, the increased risk of harm to the victim is a
13  risk of physical harm.  However, this requirement can also be
> satisfied by a risk of mental, emotional, or psychological harm."
14  (*People v. Power, supra*, 159 Cal.App.4th at p. 138, 70 Cal.Rptr.3d
> 799, citing *People v. Nguyen* (2000) 22 Cal.4th 872, 874, 877–886,
15  95 Cal.Rptr.2d 178, 997 P.2d 493.) (footnote omitted).

16  The two prongs "are not mutually exclusive but are interrelated."
> (*People v. Vines, supra*, 51 Cal.4th at p. 870, 124 Cal.Rptr.3d 830,
17  251 P.3d 943.)  Whether a victim's forced movement was merely
> incidental to the robbery "is necessarily connected to whether it
18  substantially increased the risk to the victim."  (*People v.
> Dominguez, supra*, 39 Cal.4th at p. 1152, 47 Cal.Rptr.3d 575, 140
19  P.3d 866.)  "[E]ach case must be considered in the context of the
> totality of its circumstances."  (*Ibid.*)

20

21  *People v. Leavel*, 203 Cal.App.4th 823, 827 (2012).

22          After reviewing the record in the light most favorable to the jury's verdict, this court

23  concludes that there was sufficient evidence introduced at petitioner's trial to support his sentence

24  of life with the possibility of parole for the crime of kidnapping to commit robbery.  The evidence

25  reflected that unarmed security guard Paramjit Kaur was standing in front of Bank of the West in

26  Stockton when two men emerged from a car, grabbed her, pushed her toward the bank, put a gun

27  to her back, told her to open the door to the bank, and pushed her inside.  Reporter's Transcript on

28  Appeal (RT) at 1154-61.  Once in the bank, she was told to sit on the floor and put her hands up.

1   *Id.* at 1161.  The men then robbed the bank tellers at gunpoint and ran out of the bank.  *Id.* at

2   1169.  A rational trier of fact could have found that moving a security guard into the bank was not

3   "merely incidental to the commission of the robbery."  A rational juror could also have found that

4   the movement of Kauer into the bank substantially increased her risk of harm over and above that

5   necessarily inherent in the crime of robbery itself.  By their actions, the robbers moved Kaur from

6   relative safety outside of the building into the bank where an armed robbery took place, thereby

7   exposing her to a substantial risk of injury or death by gunfire.

8          The decision of the California Supreme Court that a rational trier of fact could have found

9   beyond a reasonable doubt that the movement of Paramjit Kaur into the bank was not merely

10  incidental to the commission of the robbery and substantially increased the risk of harm to Kaur is

11  not an unreasonable application of *In re Winship* and *Jackson* to the facts of this case.

12  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

13         **B.  Jury Instruction Error**

14         In his second ground for relief, petitioner claims that the trial court violated his right to a

15  fair trial when it gave a jury instruction defining the crime of kidnapping to commit robbery,

16  which mistakenly included the word "rape" in the original written instruction.  ECF No. 1 at 22-

17  24.  Petitioner argues that the inclusion of the word "rape" in that instruction might have led the

18  jury to erroneously assume that petitioner had raped the security guard he was charged with

19  kidnapping.  *Id.*

20         Petitioner has attached as an exhibit a written copy of CALJIC No. 9.54, which states, in

21  pertinent part, "Every person who, with the specific intent to commit robbery, kidnaps any

22  individual, is guilty of the crime of kidnapping to commit rape in violation of section 209(b)(1) of

23  the Penal Code."  *Id.* at 43.  However, the copy of the sanitized instructions given to the jury,

24  contained in the Clerk's Transcript on Appeal (CT) which has been filed with this court, has the

25  word "rape" crossed out.  CT at 615.  When the trial judge read CALJIC No. 9.54 to the jury in

26  open court, he stated:

27  /////

28  /////

13

1        Defendant is accused in Count Fifteen of having committed the
crime of kidnapping to commit robbery, a violation of Penal Code
2   Section 209(b)(1) of the Penal Code.

3        Every person who with the specific intent to commit robbery
kidnaps any individual is guilty of the crime of kidnapping, *that*
4   *should be robbery, forgive me*, violation of Penal Code Section
209(b)(1) of the Penal Code.

5

6   RT at 1863-64 (emphasis added).  Petitioner claims, in essence, that the typographical error

7   inserting the word "rape" into this jury instruction rendered his trial fundamentally unfair.

8        The last reasoned decision on this claim of jury instruction error is the California Supreme

9   Court's summary denial of petitioner's habeas petition containing the same claim.  Resp't's Lodg.

10  Doc. 13.  As explained above, this summary denial is a decision on the merits of this claim.

11       In general, a challenge to jury instructions does not state a federal constitutional claim.

12  *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.

13  1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely

14  'undesirable, erroneous, or even "universally condemned,"' but must violate some due process

15  right guaranteed by the fourteenth amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

16  To prevail on such a claim, petitioner must demonstrate "that an erroneous instruction 'so

17  infected the entire trial that the resulting conviction violates due process.'"  *Prantil v. State of*

18  *Cal.*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Darnell v. Swinney*, 823 F.2d 299, 301 (9th Cir.

19  1987)).

20       Under the circumstances presented here, the Supreme Court's decision that the

21  typographical error did not violate petitioner's right to a fair trial is not unreasonable.  Although

22  one of the written copies of this jury instruction erroneously contained the word "rape," it was

23  apparently crossed out in the written instruction given to the jury and the trial judge corrected the

24  error when reading the instructions in open court.  The California Supreme Court could

25  reasonably have decided that these actions by the trial judge to correct the error removed any

26  confusion in the jurors' minds as to the crime with which petitioner was being charged.  This is a

27  reasonable assumption, given that no evidence of a rape was introduced at petitioner's trial.

28  /////

1   Petitioner has failed to carry his burden to show that there was no reasonable basis for the

2   state court to deny relief as to this claim of jury instruction error.  Accordingly, he is not entitled

3   to federal habeas relief.

4   **C.  Ineffective Assistance of Appellate Counsel**

5   In petitioner's next ground for relief, he claims that his appellate counsel was ineffective

6   in failing to raise the following two claims on appeal: (1) the evidence introduced at petitioner's

7   trial was insufficient to support the charge of kidnapping to commit robbery, and (2) the

8   prosecutor committed misconduct based on statements during his closing argument concerning

9   "petitioner's failure to testify and explain his whereabouts during the time of the robbery."  ECF

10   No. 1 at 25-26.  Petitioner explains that he asked his appellate counsel to raise these claims, but

11   "counsel's position was that the claims were not good claims, and she asserted that she researched

12   these issues (on more than one occasion) . . . and found that they had no merit."  *Id.* at 25-26.

13   Petitioner argues that if this court finds the evidence is insufficient to support his conviction for

14   kidnapping for the purpose of robbery, "then it must find also that counsel on appeal was

15   ineffective, and grant proper relief."  *Id.* at 26.  Petitioner includes as an exhibit to his petition a

16   letter to him from his appellate counsel explaining that she did not include the two claims

17   suggested by petitioner in her appellate brief because "those issues are not arguable on this

18   record."  *Id.* at 47.  Counsel further stated that she researched both issues and "looked into them

19   very carefully" and that she "only rejected them because there was no favorable case law to

20   support the arguments."  *Id.*

21   The clearly established federal law for ineffective assistance of counsel claims is

22   *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant

23   must show that (1) his counsel's performance was deficient and that (2) the "deficient

24   performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or

25   her representation "fell below an objective standard of reasonableness" such that it was outside

26   "the range of competence demanded of attorneys in criminal cases."  *Id.* at 687–88 (internal

27   quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a

28   fair trial, a trial whose result is reliable.'"  *Richter*, 131 S.Ct. at 787-88. (quoting *Strickland*, 466

U.S. at 687).  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

The Strickland standards apply to appellate counsel as well as trial counsel.  *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed."  *Id.*  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  *Id.  See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  *Id.* at 1434 n.9.

As set forth above, the court has determined that there was sufficient evidence to support petitioner's conviction and sentence on the charge of kidnapping for the purpose of robbery. Accordingly, petitioner has failed to show prejudice with respect this claim of ineffective assistance of appellate counsel, or that he probably would have prevailed on appeal had his appellate counsel raised it.

With respect to the issue of prosecutorial misconduct, the facts are as follows.  During the prosecutor's closing argument, the following exchange took place:

/////

THE PROSECUTOR:   Ask yourself this question.   When Mr. Humphrey came on yesterday and started talking about his closing, this is what he said.  The defense argument was that Mr. Hill was wrongfully accused, we have the wrong guy.  He didn't say the evidence just doesn't support it, the weight of the evidence isn't there.  He said Mr. Hill is the wrongfully accused person.  Today he said he's not the guy, he's not the guy robbing the place.  If Mr. Hill was wrongfully accused, where was he on November 30th, 2006, at 4:00 p.m. when Sleep Train and Sprint was robbed?

Where was he on December 7th, 2006, at 11:21 when Bank of the West was robbed?

MR. HUMPHREY:  [Petitioner's trial counsel]:  Objection.

THE COURT:  That is permissible.  He is allowed to comment on the fact the defense does not put on evidence.  You can't use the fact Mr. Hill didn't testify.  But they argued there might be other evidence.

THE PROSECUTOR:  Where was he December 27th, 2006, when Jack-in-the-Box was robbed?

Where was he on January 5th, 2007, at 8:00 p.m. when Subway East was robbed?

Where was he on January 8th, 2007, when Subway West was robbed?

Where was he on January 23rd, 2007, when TJ Cigarettes was robbed?

There are logical witnesses to tell us where Mr. Hill was at.  Friends, family, employers, coworkers.   No one testified.   He, couldn't have robbed that place because he's with me.  The only person that we know he's friends with is Devonya Carson.   Mr. Humphrey said that yesterday.  Devonya Carson and Mr. Hill are friends.  Where – these are logical witnesses, where are you?

November 30th, where were you?  Witness can tell us that.

Where is the defense's evidence?

How did Mr. Hill's DNA end up in that orange hat and that black mask?  How?

What evidence was presented to explain that away?

RT at 1824-25.  Petitioner is apparently claiming that these comments by the prosecutor

improperly commented on his failure to testify that he had an alibi at the time the robberies took

place.

17

The Fifth Amendment prohibits a prosecutor from commenting to the jury regarding the defendant's failure to testify at trial. *See Griffin v. California*, 380 U.S. 609, 615 (1965). A prosecutorial comment in argument runs contrary to the *Griffin* rule "if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987). However, relief is to be granted on such a claim only "'where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal.'" *Id.* (citations omitted). *See also Beardslee v. Woodford*, 358 F.3d 560, 587 (9th Cir. 2004); *United States v. Olano*, 62 F.3d 1180, 1196 (9th Cir. 1995); *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993). Conversely, relief will not be granted where the prosecutorial comment is a single, isolated incident, does not stress the inference of guilt from silence as a basis for the verdict and is followed by a curative instruction. *Lincoln*, 807 F.2d at 809.

The prosecutor's remarks in this case did not rise to the level of a *Griffin* violation. The prosecutor was commenting on the lack of alibi witnesses to support petitioner's defense of mistaken identity. This does not constitute an adverse comment on petitioner's failure to testify. Although the prosecutor at one point was over-inclusive in his argument when he stated "no one testified," which necessarily sweeps into the comment a reference to the accused, it was a single isolated use of the words "no one" and there were no other references to the petitioner not testifying. Moreover, the context of the argument places the focus on "Friends, family, employers, coworkers" not testifying. A prosecutor is entitled to comment on a defendant's failure to present witnesses so long as it is not phrased to call attention to the defendant's own failure to testify. *United States v. Hill*, 953 F.2d 452, 460 (9th Cir. 1991). *See also United States v. Ponce*, 51 F.3d 820, 831 (9th Cir. 1995) (not an improper comment on defendant's failure to testify where prosecutor argued, "But I ask you to look at the various things that the defense attorneys did not show you. Look at the things the defense attorneys did not offer you"); *United States v. Kessi*, 868 F.2d 1097, 1106 (9th Cir. 1989) ("It is permissible for the prosecutor to call attention to [defendant's] failure to present exculpatory evidence so long as he does not comment

1   on the decision not to testify"). The prosecutor's comments in this case did not suggest that

2   petitioner himself should have testified. Thus, they were permissible. *See United States v.*

3   *Wasserteil*, 641 F.2d 704, 709-10 (9th Cir. 1981) ("'[a] comment on the failure of the defense as

4   opposed to the defendant to counter or explain the testimony presented or evidence introduced is

5   not an infringement of the defendant's Fifth Amendment privilege.'" (quoting *United States v.*

6   *Dearden*, 546 F.2d 622, 625 (5th Cir. 1977)). *See also People v. Wash*, 6 Cal.4th 215, 262-63

7   (1993) (under California law a prosecutor may properly comment on a defendant's failure to

8   introduce material evidence or to call logical witnesses without infringing the defendant's right to

9   remain silent).

10       The court also notes that petitioner's jury received the following instructions:

11           A defendant in a criminal trial has a constitutional right not to be
             compelled to testify. You must not draw any inference from the
12           fact that a defendant does not testify. Further, you must neither
             discuss this matter nor permit it to enter into your deliberations in
13           any way.

14           In deciding whether or not to testify, the defendant may choose to
             rely on the state of the evidence and upon the failure, if any, of the
15           People to prove beyond a reasonable doubt every essential element
             of the charge against [him]. No lack of testimony on defendant's
16           part will make up for a failure of proof by the People so as to
             support a finding against [him] on any essential element.

17

18   CT at 664, 665.

19       These instructions clearly informed the jurors that they could not treat petitioner's silence

20   as substantive evidence of guilt, that they were not to draw any negative inference from

21   petitioner's failure to testify, and that they could not penalize petitioner for failing to fill in

22   material gaps in the evidence. Nor did the prosecutor ask the jury to draw an adverse inference

23   based on petitioner's election not to testify. Given these circumstances, petitioner has failed to

24   show prejudicial error by virtue of the prosecutor's comments. *See Rice v. Wood*, 77 F.3d 1138,

25   1143 (9th Cir. 1996) (*Griffin* error is subject to harmless-error analysis).

26       For the foregoing reasons, petitioner has failed to show that the prosecutor committed

27   misconduct during his closing argument. Accordingly, petitioner cannot show prejudice resulting

28   from the failure of his appellate counsel to raise a claim of prosecutorial misconduct on appeal.

The decision of the California Supreme Court rejecting petitioner's claims of ineffective assistance of appellate counsel is not contrary to or an unreasonable application of federal law. Appellate counsel's decision not to include these two claims in petitioner's direct appeal in state court, but instead to focus on claims that counsel believed were more meritorious, was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Accordingly, petitioner is not entitled to relief on this claim.

### D. Restitution Fine

Petitioner raises four claims challenging the restitution fine imposed by the sentencing court. In his first such claim, petitioner argues that the trial court exceeded "its statutory power" in imposing restitution on petitioner without conducting a hearing to determine petitioner's ability to pay such a fine. ECF No. 1 at 27-29. Petitioner argues that he did not have the ability to pay the fine imposed. *Id.* In his second such claim, petitioner argues that the trial court violated state law in considering any possible prison earnings to determine whether petitioner had the ability to pay a restitution fine. *Id.* at 30-31. In his third claim, petitioner argues that his trial counsel rendered ineffective assistance in failing to challenge the imposition of an "excessive restitution fine." *Id.* at 32. In his fourth claim, petitioner argues that his claims challenging his restitution fine have not been waived by "any perceived failure by petitioner to object at the imposition of the fine at sentencing." *Id.* at 34.

The federal writ of habeas corpus is only available to persons "in custody" at the time the petition is filed. 28 U.S.C. §§ 2241(c), 2254(a); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). This requirement is jurisdictional. *Id.* The Ninth Circuit has explicitly held that "an attack on a restitution order is not an attack on the execution of a custodial sentence . . . [Thus,] § 2254(a) does not confer jurisdiction over a challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976, 983 (9th Cir. 2010) (citing *United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999)). Because the four claims set forth above challenge only the restitution portion of petitioner's sentence, the "custody" requirement of Section 2254(a) is not satisfied and the court does not have jurisdiction to entertain these claims. In addition, to the extent petitioner's claims challenging his restitution order concern violations of state law, petitioner has failed to state a cognizable federal habeas

1    claim.  As set forth above, federal habeas relief does not lie for violations of state law.  *Estelle v.*

2    *McGuire*, 502 U.S. 62, 67 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)

3    ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or

4    absence of a state law violation is largely beside the point").

5          With regard to petitioner's claim that his trial counsel rendered ineffective assistance in

6    failing to object to the imposition of the restitution fine, petitioner has failed to demonstrate

7    prejudice.  *Strickland*, 466 U.S. at 694.  There is no evidence that an objection to the fine would

8    have resulted in a different outcome at sentencing.  Accordingly, petitioner is not entitled to relief

9    on this claim.

10          **E.  Cumulative Error**

11          In his final claim for relief, petitioner argues that "the cumulative effect of the states errors

12   led to the conviction of petitioner and further miscarriage of justice during his direct appeal."

13   ECF No. 1 at 35.

14          The cumulative error doctrine in habeas recognizes that, "even if no single error were

15   prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless

16   be so prejudicial as to require reversal.'"  *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002)

17   (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).  In the absence of a specific

18   constitutional violation, habeas review of trial error is limited to whether the error "so infected the

19   trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v.*

20   *DeChristoforo*, 416 U.S. 637, 643 (1974).  A habeas court may not grant the writ on the basis of

21   errors of state law whose combined effect does not violate the Federal Constitution.  *Lewis v.*

22   *Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  However, where

23   there is no single constitutional error existing, nothing can accumulate to the level of a

24   constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Rupe v.*

25   *Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).  "The fundamental question in determining whether

26   the combined effect of trial errors violated a defendant's due process rights is whether the errors

27   rendered the criminal defense 'far less persuasive,' *Chambers v. Mississippi*, 410 U.S. 284, 294

28   (1973), and thereby had a 'substantial and injurious effect or influence' on the jury's verdict."

1  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S.

2  619, 637 (1993)).

3          This court has addressed petitioner's claims of error and has concluded that no error of

4  constitutional magnitude occurred.  There is no evidence that an accumulation of errors rendered

5  petitioner's trial fundamentally unfair.  Accordingly, he is not entitled to relief on his claim that

6  cumulative error violated his right to due process.

7  **IV. Conclusion**

8          Accordingly, IT IS HEREBY ORDERED that:

9      1.  Petitioner's application for a writ of habeas corpus is denied;

10     2.  The court declines to issue a certificate of appealability; and

11     3.  The Clerk is directed to close this case.

12  DATED:  December 18, 2014.

13

14                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28